**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-0901-WJM-KMT

BRITNEY NICOLE KENNEDY,

   Plaintiff,

v.

KIRK M. TAYLOR, in his official capacity as Sheriff of Pueblo County, Colorado,
STEVEN CHAVEZ, individually,
ELY DYNES, individually, and
JOHN DOES 1–5, individually,

   Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

---

This civil rights action arises out of the November 21, 2019 traffic stop and arrest of Plaintiff Britney Nicole Kennedy by deputies employed by the Pueblo County Sheriff's Office (the "SO").  (ECF No. 1.)  Plaintiff sues Kirk M. Taylor, in his official capacity as Sheriff of Pueblo County, Colorado, as well as SO deputies Steven Chavez, Ely Dynes, and deputies John Doe 1–5[1] in their individual capacity (collectively, the "Defendant Deputies") for Fourth Amendment violations under 42 U.S.C. § 1983.  (*Id.*)

This matter is before the Court on Defendant Deputies' and the Defendant Taylor's (collectively, "Defendants") Motion to Dismiss ("Motion").  (ECF No. 20.) Plaintiff submitted her Response to Motion to Dismiss ("Response") (ECF No. 26) on July 6, 2021, and Defendants filed their Reply in Support of Motion to Dismiss ("Reply") (ECF No. 33) on August 2, 2021.  For the following reasons, the Motion is denied.

---

[1] The Court reads the caption to reflect that John Does 1–5 are SO deputies.

## I. BACKGROUND

The following factual summary is drawn from Plaintiff's Complaint and Jury Demand ("Complaint").  (ECF No. 1.)  The Court assumes the allegations contained in the Complaint are true for the purpose of deciding the Motion.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

On November 21, 2019, Plaintiff was pulled over by Defendant Chavez while she drove on Spaulding Avenue in Pueblo, Colorado.  (¶¶ 6–7.)[2]  Defendant Chavez informed Plaintiff that he had pulled her over for speeding in an apartment complex parking lot, which was private property.  (¶ 8.)  He lacked legal authority to enforce a speed limit on private property or initiate a traffic stop based on suspicion of speeding on private property.  (*Id.*)  Nevertheless, he admonished Plaintiff for driving over the parking lot's speed limit.  (¶ 6.)   Then Defendant Chavez asked Plaintiff for her insurance and vehicle registration.  (¶ 9.)  While Plaintiff searched for her documents, Defendant Chavez drew his pistol and pointed it at Plaintiff's vehicle.  (*Id.*)  He ordered Plaintiff to exit the car, and she complied.  (¶ 12.)

After exiting the vehicle, Plaintiff "criticiz[ed] [Defendant] Chavez for his unnecessary and dangerous use of potentially deadly force and disrespect for a citizen he was sworn to protect."  (¶ 13.)  Defendants Chavez and Dynes handcuffed Plaintiff and shoved her against the trunk of her car.  (¶ 14.)  The car began to roll forward because it had been left in neutral.  (*Id.*)  Then Defendant Chavez stated, "I've had enough of this" and "violently slammed Plaintiff headfirst into the ground."  (*Id.*)  Plaintiff sustained multiple abrasions, bruised ribs, a sprained arm, and a concussion.  (*Id.*)

---

[2] Citations to paragraph numbers, without more, *e.g.* (¶ __), are to paragraphs in the Complaint.  (ECF No. 1.)

Afterward, Defendants Chavez and Dynes issued Plaintiff citations for speeding and careless driving.  (¶ 17.)  These citations were based on false claims that Plaintiff had been observed speeding and driving carelessly on Spaulding Avenue in Pueblo, Colorado.  (¶ 44.)  On November 18, 2020, the district attorney dismissed all charges against Plaintiff, noting "serious doubts about the alleged driving observed by the officers."  (¶ 17.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III. LEGAL STANDARD

Plaintiff asserts claims for (1) unreasonable seizure, (2) excessive force, and (3) malicious prosecution in violation of the Fourth Amendment pursuant to 42 U.S.C. §

1983.  Under § 1983, an injured person is permitted to seek damages for the violation of her federal rights against a person acting under color of state law.  *See* 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988).  To assert a claim under § 1983, Plaintiff must show (1) that she had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law.  *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009).  "A defendant cannot be liable under § 1983 unless personally involved in the deprivation." *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation omitted).

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (internal quotation marks omitted).  "Once the qualified immunity defense is asserted," the plaintiff must show: "first, the defendant[s'] actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).  "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 211 (2017).

## IV. ANALYSIS

Defendants argue that Plaintiff has failed to state a claim under § 1983 for unreasonable seizure, excessive force, or malicious prosecution.  (ECF No. 20.)  In their Motion, Defendants decline to argue that Defendant Deputies are entitled to qualified immunity because Plaintiff's right was not clearly established at the time of the alleged

violation; therefore, the Court does not address this issue.  *Sayed v. Lt. Page Virginia*, 2017 WL 5248048, at *4, n.1 (D. Colo. Nov. 13, 2017), *aff'd in part, appeal dismissed in part sub nom. Sayed v. Virginia*, 744 F. App'x 542 (10th Cir. 2018) ("[B]ecause the Defendants mention the defense without engaging in the analysis, they have failed to raise the affirmative defense of qualified immunity.").

## A.    Video Evidence

Defendants Chavez and Dynes were each wearing a body camera that recorded the incident.  Also, Defendant Chavez's patrol vehicle was equipped with a dashcam that recorded the incident.  Defendants attached to their Motion video footage from the body cameras and the dashcam.[3]  (ECF No. 20-1.)

Well-settled authority provides that the Court "may consider a document outside the pleadings, even in a Rule 12(b)(6) analysis, if the document is (1) mentioned in the complaint, (2) central to the claims at issue, and (3) not challenged as inauthentic." *Ramirez v. Hotel Equities Grp., LLC*, 2019 WL 5964968, at *1 (D. Colo. Nov. 13, 2019) (quotation marks and alterations omitted) (quoting *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013)).

Defendants argue that the Court may consider the videos without converting the Motion to a motion for summary judgment under Federal Rule of Civil Procedure 12(d), emphasizing that Plaintiff references the videos and incorporates images from them in the Complaint.  (ECF No. 20 at 5.)  Defendants include a section titled "Content of BWC and Dashcam Videos," in which Defendants analyze and interpret the video evidence.

---

[3] Exhibit A-1, Patrol Vehicle Dashcam Footage; Exhibit A-2, Defendant Dynes Body Camera Footage; Exhibit A-3 and Exhibit A-4, Defendant Chavez Body Camera Footage.  *See* Conventionally Submitted Material, ECF No. 25, filed June 15, 2021.

(*Id.* at 5–6.)  Defendants argue that the video evidence contradicts certain allegations made in the Complaint.  (*Id.* at 12.)

Plaintiff disagrees, arguing that the video evidence should not be considered at this stage.  (ECF No. 26 at 5.)  Plaintiff asserts that there is a significant factual dispute regarding what precisely the footage depicts; Plaintiff's counsel has reviewed the videos and disagrees with Defendants' characterization of them.  (*Id.*)  Plaintiff also asserts that she "is without any knowledge regarding whether all videos have been provided or whether the video footage is wholly unmodified."  (*Id.*)

Armed with the video footage, Defendants appear to be attempting to steer the discussion and analysis in the Motion to one which focuses on the disputed evidence standard under Federal Rule of Civil Procedure 56, as opposed to the plausibility pleading standard that applies to a Rule 12 motion to dismiss.  The Court has considered the parties' arguments, and in its discretion, concludes it will only consider the video evidence to the extent that it "clearly contradicts" the allegations in the Complaint.  *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019); *see also Harris v. Romero*, 2021 WL 1169985, at *8 (D. Colo. Mar. 29, 2021) (noting that, in reviewing video on a motion to dismiss, "the Court views the video in the light most favorable to Plaintiff, except where the video 'blatantly contradicts' Plaintiffs' version of events").

## B.   Unreasonable Seizure

A traffic stop is valid under the Fourth Amendment if it is "based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."  *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) (citation omitted).  And our cases are clear that the reasonableness of the traffic stop is an objective inquiry; we do not consider the

subjective motivations of law enforcement—those motivations are irrelevant.  *See United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995).  Instead, the "sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction."  *Id.* (quotation omitted).

Defendants argue that the traffic stop was supported by reasonable suspicion that Plaintiff was speeding on Spaulding Avenue.  (ECF No. 20 at 10.)  Defendants assert that Defendant Chavez observed Plaintiff commit traffic violations on public roads before he initiated the traffic stop.  (*Id.* at 11.)  But this assertion is not supported by the facts alleged in the Complaint, in which Plaintiff alleges that Defendant Chavez "invented" these observations to support the traffic stop.  (¶¶ 17, 44.)  Plaintiff further substantiates this claim by alleging that "[o]n November 18, 2020, the district attorney dismissed all the charges against [Plaintiff], noting 'serious doubts about the alleged driving observed by the officers.'"  (*Id.*)  Based on the facts alleged in the Complaint, the Court finds no support for the Defendants' claim that Defendant Chavez had observed Plaintiff commit a traffic violation on public roads before he initiated the traffic stop.

Plaintiff alleges that Defendant Chavez stopped Plaintiff for speeding in a private parking lot, which she alleges is a non-offense that Defendant Chavez had no authority to enforce.  (¶ 8.)  Defendants argue, for the first time in their Reply (ECF No. 33), that:

> even accepting as true Plaintiff's allegations that Defendant Chavez initiated the traffic stop for speeding in the parking lot, and that he did not have the authority to do so under Colorado law; such a violation of Colorado law would not constitute a violation of Plaintiff's federal constitutional rights.

(ECF No. 33 at 3.)  This is a new argument that strays far from the argument Defendants made in their Motion, which was completely based on the assertion that

Defendant Chavez had observed Plaintiff committing traffic violations on public roads. Because Plaintiff does not have a further opportunity to respond to Defendants' Reply, *see* D.C.COLO.LCivR 7.1D, the Court finds that Defendants have waived this argument. *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) (arguments raised for the first time in a reply brief generally are deemed waived).

Plaintiff alleges that Defendant Chavez stopped her after observing her going "fast" in a private parking lot—a non-offense that Defendant Chavez had no authority to enforce. (¶ 8.) She alleges that his subsequent statements that he observed her speeding and driving carelessly on public roads were false. (¶ 44.) Further, she alleges that even the district attorney had "serious doubts about the alleged driving observed by the officers." (¶ 18.) Based on the allegations in the Complaint, the Court finds that Plaintiff has adequately stated a claim for unreasonable seizure under the Fourth Amendment.

## C.    Excessive Force

"The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *See, e.g., Graham v. Connor*, 490 U.S. 386, 395 (1989); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009). This standard "requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham*, 490 U.S. at 396). A "court assesses the reasonableness of an officer's conduct from the

perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (further citation omitted)).

Plaintiff's excessive force claim is supported by several specific factual allegations in the Complaint: (1) Defendant Chavez pointed his pistol at Plaintiff while she searched for her insurance documents (¶ 9), (2) Defendants Chavez and Dynes unnecessarily handcuffed Plaintiff and shoved her against the trunk of her car (¶ 14), and (3) Defendant Chavez "slammed [Plaintiff] headfirst into the ground" (*id*).

Defendants argue that the allegations that Plaintiff was shoved against the trunk of her car and slammed into the ground "are contradicted by the [body camera footage]." (ECF No. 20 at 20.) The Court has reviewed the video evidence and determined that it does not "clearly contradict" these allegations; therefore, the Court decides this Motion based on the allegations in the Complaint. *Myers*, 773 F. App'x at 1036; *see also Harris*, 2021 WL 1169985, at *8.

Plaintiff alleges that when Defendant Chavez "violently slammed [her] headfirst into the ground," she was only suspected of a traffic violation, she was not resisting arrest or attempting to flee, and she was not a threat to anyone. (¶ 14; ECF No. 26 at 10.) "It is clearly established that an officer uses excessive force when he executes a forceful takedown of a subject who at most was a misdemeanant, but otherwise posed no threat and did not resist arrest or flee." *Myers*, 773 F. App'x at 1038; *see also Emery v. Salt Lake City Corp.*, 2018 WL 1620928, at *14 (D. Utah Mar. 30, 2018) (finding a "clearly established . . . right under the Fourth Amendment to be free from . . . tackling,

punching, and Tasing" where suspect "was not threatening anyone or fleeing, had no weapons, had not disobeyed any instructions from the Officers, and was in no danger of harming anyone").  Therefore, the Court finds that Plaintiff has adequately stated a claim for excessive force under the Fourth Amendment.

### D.    Malicious Prosecution

The Fourth Amendment to the U.S. Constitution prohibits, among other things, "unreasonable searches and seizures."  Through 42 U.S.C. § 1983, an individual may sue government officers for pretrial detention without probable cause, in violation of the protection against unreasonable seizures.  *Manuel v. City of Joliet*, 137 S. Ct. 911, 917–20 (2017).  The Tenth Circuit refers to this as "malicious prosecution."  *Sanchez v. Hartley*, 810 F.3d 750, 754 n.1 (10th Cir. 2016).

When addressing malicious prosecution claims brought pursuant to § 1983, the Tenth Circuit uses common law elements of malicious prosecution as a "starting" point for its analysis but ultimately determines whether the "plaintiff has proven the deprivation of a constitutional right."  *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257 (10th Cir. 2007).  A malicious prosecution claim under § 1983 includes the following elements:

> (1) [T]he defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Montoya v. Vigil*, 898 F.3d 1056, 1066 (10th Cir. 2018) (quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).

Here, Plaintiff alleges that Defendant Deputies falsely stated that (1) Plaintiff

reached for a gun in her car, (2) Plaintiff head-butted and kicked Defendant Deputies, and (3) Plaintiff had been speeding and driving recklessly.  (¶ 44.)  Plaintiff alleges that these false statements led to her being charged with several crimes without probable cause.  (¶ 45.)  Plaintiff alleges that these false charges were dismissed by the district attorney who noted "serious doubts about the alleged driving observed by the officers." (¶ 18.)   Plaintiff also alleges that she sustained damages as a result of the malicious prosecution.  (¶ 47.)  These assertions suffice to plead a claim for malicious prosecution.

Defendants argue that Plaintiff has not stated a claim because there was probable cause to prosecute Plaintiff for the speeding offense.  (ECF No. 20 at 10–11.) They argue that there was probable cause because (1) Defendant Chavez observed Plaintiff speeding and driving carelessly, and (2) Plaintiff admitted she was speeding. (*Id.*)

As discussed above, the Complaint does not support the Defendants' assertion that Defendant Chavez observed Plaintiff speeding and driving recklessly.  Therefore, the Court is not persuaded by Defendants' first argument.

Next, Defendants argue that there was probable cause for the speeding charge because Plaintiff admitted that she was speeding during her conversation with Defendant Chavez after he pulled her over.  (ECF No. 20 at 12.)  However, the Complaint does not contain allegations that Plaintiff admitted to speeding; to the contrary, the Complaint specifically denies that Defendant Chavez observed Plaintiff's purported speeding.  (¶¶ 17, 25.)  Defendants rely on video evidence to substantiate their assertion that Plaintiff admitted to speeding.  (ECF No. 20-3.)  The video contains

a conversation between Defendant Chavez and Plaintiff in which Plaintiff estimates her

speed at fifty-three miles per hour.  (ECF No. 33 at 6.)  The Court has reviewed the

video footage and determined that it does not "clearly contradict" any of Plaintiff's

allegations; therefore, the Court decides this Motion based on the allegations in the

Complaint.  *Myers*, 773 F. App'x at 1036.  However, even assuming that Plaintiff did

admit to going fifty-three miles per hour, there is no evidence before the Court of the

posted speed limit on Spaulding Avenue, so the Court cannot conclude that Plaintiff was

speeding.

Based on the allegations in the Complaint, the Court finds that Plaintiff has

adequately stated a claim for malicious prosecution under the Fourth Amendment.

**E.      Municipal Liability**

Section 1983 imposes liability on:

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983.  The Supreme Court held in *Monell v. Department of Social Services*

that "person," as used in this statute, includes "municipalities and other local

government units," more specifically, "local government units which are not considered

part of the State for Eleventh Amendment purposes."  436 U.S. 658, 691 & n.54 (1978).

The relevant policy or custom can take several forms, including:

> (1) a formal regulation or policy statement; (2) an informal
> custom amounting to a widespread practice that, although
> not authorized by written law or express municipal policy, is
> so permanent and well settled as to constitute a custom or
> usage with the force of law; (3) the decisions of employees
> with final policymaking authority; (4) the ratification by such

> final policymakers of the decisions—and the basis for
> them—of subordinates to whom authority was delegated
> subject to these policymakers' review and approval; or
> (5) the failure to adequately train or supervise employees, so
> long as that failure results from deliberate indifference to the
> injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted; alterations incorporated). Plaintiff argues that she has plausibly alleged the City's liability based on a failure to train theory. (ECF No. 29 at 11.)

Defendants argue that Plaintiff has failed to state a claim for failure to train because Plaintiff has not stated a claim for an underlying constitutional violation. (ECF No. 20 at 13.) However, the Court has concluded that Plaintiff has adequately pleaded multiple constitutional violations. Therefore, the Court is not persuaded by Defendants' argument. The Court finds that Plaintiff has stated a claim for *Monell* liability.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendants' Motion to Dismiss (ECF No. 20) is DENIED.

Dated this 21st day of December, 2021.

BY THE COURT:

William J. Martinez
United States District Judge